UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY VOJASKOVIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   1:05-cv-0116-TAB-DFH |
| | ) |
| PREMIER MANUFACTURING SUPPORT | ) |
| SERVICES and PREMIER SUPPORT | ) |
| SERVICES, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**[1]

**I.    Introduction.**

Defendant hired Plaintiff as an industrial cleaner at a manufacturing facility in Princeton, Indiana in March 2003. Soon after her hire, Plaintiff injured her foot on the job, and Defendant placed her in a light-duty position. A year later, Defendant terminated Plaintiff after a physician articulated permanent restrictions. Plaintiff claims that Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* ("ADA"), when it failed to accommodate her disability. Defendant asserts that its actions did not violate the ADA because after it determined that Plaintiff was unable to perform the essential duties of her position no vacant position for which she was qualified existed and it had no legal obligation to retain her in the light-duty position.

For the reasons set forth below, Defendant's motion for summary judgment [Docket No.

---

[1] This entry is a matter of public record and will be made available on the Court's web site. However, the Court does not consider the issues addressed in this entry sufficiently novel to justify commercial publication.

38] is GRANTED.

**II.      Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Militello v. Central States, Southeast and Southwest Areas Pension Fund,* 360 F.3d 681, 685 (7th Cir. 2004). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.'"  *Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 815 (7th Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court construes all facts and draws all reasonable inferences in the light most favorable to the non-moving party.  *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).  "Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, [Plaintiff] must respond to [Defendant's] motion with evidence setting forth specific facts showing that there is a genuine issue for trial."  *Michael v. St. Joseph County*, 259 F.3d 842, 845 (7th Cir. 2001).

**III.     Background.**[2]

Defendant supplies and manages personnel to and for its customers, which are primarily in the automotive manufacturing industry.  [Scott Thomas Aff. ¶ 3.]  In March 2003, Defendant hired Plaintiff as an industrial cleaner at the Toyota manufacturing facility in Princeton, Indiana.

---

[2] The facts are either undisputed or viewed in a light most favorable to Plaintiff, the non-moving party.  In addition, this background section is an overview of the facts, not an exhaustive recitation of all material facts.

[Thomas Aff. ¶ 4; Pl. Dep. p. 27.]  Plaintiff was an at-will employee.  [Thomas Aff. ¶ 20.]

On May 24, 2003, Plaintiff stepped into a hole while working as an industrial cleaner and injured her foot.  [Thomas Aff. ¶ 7.]  She was seen -- presumably by a physician[3] -- and released to return to work with restrictions.  [Pl. Dep. p. 45.]  Defendant's director of operations, Scott Thomas, determined whether it was feasible for an injured employee to be assigned to light duty pending recovery from an injury.  [Dave Cueto Dep. p. 11.]  Defendant initially gave Plaintiff a light-duty assignment in the facility's paint shop.  [Pl. Aff. ¶ 2.]  She was not able to carry out that assignment because it required her to wear steel-toed boots that she was restricted from wearing.  [*Id*. ¶ 3.]  Consequently, in July 2003 Defendant assigned Plaintiff to the 901[4] office to assist with clerical duties.  [*Id*.]

Plaintiff obtained assignments from five individuals in the 901 office -- accounts receivable supervisor Kim Gonzalez [LaMar Dep. p. 6], safety manager Dave Cueto [Cueto Dep. p. 6.], accounts receivable clerk Keri Lamar, "plastics team leader" Dan Mans [Mans Dep. p. 9], and "kaizen manager" Thomas La Grange [LaGrange Dep. pp. 6, 10].  She assisted these individuals with whatever extra work they had available.  During periods where no extra work was available, Plaintiff would "be on the internet" or would "play solitaire on the computer."  [LaMar Dep. pp. 13-14.]  While working in the 901 office, Plaintiff did not have a designated work area or job title.  [LaMar Dep. p. 10]  Any tasks she performed remained the official responsibility of the individuals she assisted.  [Mans Dep. p. 10; LaMar Dep. p. 12.]

---

[3] Neither party submitted evidence with respect to the who, what, where, and when of Plaintiff's initial diagnosis, treatment, prognosis, or work restrictions.

[4] "901" apparently refers to the building number.  [Cueto Dep. p. 9.]

In a September 20, 2003, letter to Thomas, Plaintiff expressed her desire to remain in the 901 office during the absence of another office employee. [Pl. Dep. Ex. 5.] "If I am offered to stay, Kim will not have to train a new temp all over again or handle the extra workload on her own" wrote Plaintiff. [*Id.*]

Shortly after Plaintiff submitted her September 20 letter, Gonzalez and another supervisor, Paul Casey, offered her a position in the parts department occupied by Rick Henry, which she eventually accepted.[5] [Pl. Dep. p. 94.] Two days later, Defendant rescinded this offer, explaining that the individuals who made the offer did not have the authority to do so. [Pl. Dep. p. 95,[6] Thomas Aff. ¶¶ 13-14.] For two years ending in November 2004, Rick Henry held the parts position Casey and Gonzalez discussed with Plaintiff. [Henry Dep. p. 5.]

In December 2003, a doctor diagnosed Plaintiff as having reflex sympathetic dystrophy and she told LaGrange and Cueto that her disability was permanent. [Pl. Supp. Aff. ¶ 6.] Plaintiff was occupationally evaluated in April 2004. Plaintiff self-reported, "I can't do my job. I do what I can in the office because they don't want lost time, but it is so hard on me sometimes." [Pl. Dep. Ex. 3.] She further indicated that she wished to return to her "previous job" and that she really did not want to work in the office long term because she did not have many office skills. [Pl. Dep. Ex. 4, p. 7.] During this occupational capacity evaluation, the job description questionnaire completed by the Plaintiff and the therapist pertained to the industrial

---

[5] Plaintiff did not initially accept this offer because she understood it to entail a significant pay cut. However, after Casey told her it would not impact her pay, she accepted the position. [Pl. Dep. pp. 94-95.]

[6] Plaintiff testified that "Scott McMillan came back and said, no, they don't have the authority to give you that job, and he took it away." [Pl. Dep. p. 95.] Neither party has explained who McMillan is or what his status might have been with Defendant at that time.

cleaner position. [*Id*., pp. 2-3.] "Industrial cleaner" is the occupation listed on the client history form for this evaluation. [*Id*., p. 7.]

The occupational therapist who evaluated Plaintiff concluded that Plaintiff could not perform the job duties of an industrial cleaner. [Pl. Dep. Ex. 4.] In summary, she could not: (1) lift up to 25 pounds from floor to waist occasionally; (2) lift up to 50 pounds from floor to waist frequently; (3) carry up to 30 pounds one-handed occasionally; (4) squat occasionally; (5) walk continuously; (6) stand continuously; or (7) wear steel-toed boots. [*Id*.]

On May 18, 2004, Dr. John R. McLimore examined Plaintiff's injured foot. [Pl. Dep. Ex. 5.] He opined that she had reached her "maximum medical improvement status" and gave Plaintiff a 3% whole person permanent partial impairment rating. He further restricted her to no lifting greater than 10-15 pounds occasionally and no carrying greater than 25 pounds occasionally, and he formally discharged her from his care. [*Id*.]

Defendant received the information regarding Plaintiff's May 18 visit to Dr. McLimore, and Cueto discussed her status with the Defendant's human resources manager. [Cueto Dep. pp. 11-12.] The human resources manager informed Cueto that Defendant had "satisfied all of its obligations" and recommended that Plaintiff be terminated if there was no vacant position for which she was qualified. [*Id*; Thomas Aff. ¶ 15.] Cueto shared Plaintiff's medical information and human resource's recommendation with director of operations Scott Thomas. [Thomas Aff. ¶ 15.] Thomas determined that Plaintiff's restrictions rendered her incapable of performing the industrial cleaner position. [*Id*., ¶ 16.] Thomas also could not identify any vacant position for which Plaintiff was qualified. [*Id*., ¶ 17.] Defendant had no budget to create a regular office position for Plaintiff. [*Id*., ¶ 19.] Consequently, Thomas terminated Plaintiff effective June 22,

2004.  [*Id*., ¶ 21.]

**IV.     Discussion.**

Plaintiff alleges that Defendant failed to accommodate her by maintaining her in the 901 office light-duty position, or in the alternative, by giving her a position in the parts department. Under the ADA, the Defendant must provide otherwise qualified disabled employees "reasonable accommodations to [their] known physical or mental limitations. . ." unless the "accommodation would impose undue hardship."  42 U.S.C. § 12112(b)(5)(A); *Equal Employment Opportunity Commission v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005).

An employee can make a prima facie showing of ADA discrimination for failure to accommodate by showing: (1) she was disabled; (2) her employer was aware of her disability; and (3) she was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position.  *Basith v. Cook Co.*, 241 F.3d 919, 927 (7th Cir. 2001).  Defendant does not challenge Plaintiff's alleged disability, and thus, the Court does not address this issue.  Defendant does dispute that Plaintiff could perform the essential functions of the industrial cleaner position.  Plaintiff agrees that she cannot perform the essential tasks of an industrial cleaner position without accommodation.  The outcome of Defendant's summary judgment motion, therefore, hinges upon whether Plaintiff has raised a material issue as to whether a reasonable accommodation existed when Defendant terminated her employment.  *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 866 (7th Cir. 2005).  It is axiomatic that "accommodations which require special dispensations and preferential treatment are not reasonable under the ADA. . . ."  *Id.* at 867.

### 1. Nature of Plaintiff's office position.

Plaintiff first suggests that Defendant could have reasonably accommodated her by retaining her in the 901 office doing light-duty clerical work. Defendant disputes that the ADA requires this because to do so would be tantamount to requiring it to create a new position. The key issue here is whether the office assignment was permanent or temporary. With respect to reasonable accommodations, the ADA "does not require that employers transform temporary work assignments into permanent positions." *Malabarba v. Chi. Tribune Co.*, 149 F.3d 690, 696 (7th Cir. 1998). However, if the office position was a vacant permanent position for which Plaintiff could perform the essential functions, Plaintiff's termination could have violated the ADA. *Hendricks-Robinson v. Excel Co.,* 154 F.3d 685, 695-98 (7th Cir. 1998).

Plaintiff argues that the nature of this position -- temporary or permanent -- is a disputed fact. Plaintiff testifies that no one told her that the office position was temporary. [Pl. Aff. ¶ 6.] Yet, Plaintiff does not point to any authority mandating such notice. Moreover, Plaintiff's testimony is insufficient to controvert Defendant's evidence indicating that the position was temporary. Defendant's director of operations testified that the light-duty office work was a temporary placement. [Thomas Aff. ¶¶ 8-10.] The record is replete with evidence that corroborates his testimony. The light-duty office position in which Defendant placed Plaintiff after her injury had no job title or description. Plaintiff obtained assignments from five

individuals in the 901 office -- accounts receivable supervisor Kim Gonzales[7] [LaMar Dep. p. 6], safety manager Dave Cueto [Cueto Dep. p. 6], accounts receivable clerk Keri Lamar, "plastics team leader" Dan Mans [Mans Dep. p. 9], and "kaizen manager" Thomas La Grange [LaGrange Dep. pp. 6, 10]. She assisted these individuals with whatever extra work they had available. Any tasks she performed remained the official responsibility of the individuals she assisted. Plaintiff surfed the internet or played solitaire on the computer when no extra work was available. [LaMar Dep. pp. 13-14.] While working in the 901 office, Plaintiff did not have a designated work area, or job title.

Plaintiff's own words belie that she even believed this position was permanent. For example, in a December 2003 letter she submitted to Defendant's director of operations, Plaintiff expressed her desire to remain in the 901 office pending the return of another absent office employee. [Pl. Dep. Ex. 5.] Plaintiff wrote, "if I am offered to stay, Kim will not have to train a *new temp* all over again or handle the extra workload on her own." [*Id.*, emphasis added.] Although Plaintiff told LaGrange and Cueto[8] that her disability was permanent in December 2003, during an April 2004 occupational capacity evaluation that preceded her termination, Plaintiff listed "industrial cleaner" as her position and self-reported: "I can't do my job", she

---

[7] When asked what she would consider Plaintiff's "change from Industrial Cleaner to the 901 office" Gonzales answered ". . . we were accommodating her restriction." Plaintiff cites to this testimony in an attempt to bolster her assertion that her light duty was a permanent position. [Docket No. 41, p. 8.] This statement taken in isolation does not create a disputed issue of fact regarding the permanency of Plaintiff's light-duty assignment. The word "restrictions" has no point of reference and the use of the word "accommodation" by a layperson does not take on the legal connotation that Plaintiff implies.

[8] Notably, Plaintiff did not tell Scott Thomas, the ultimate decision maker to whom she had addressed her December 2003 letter, that she was disabled, and she produced no evidence that either LaGrange or Cueto reported this information to Thomas.

8

wished to return to her "previous job," and that she really did not want to work in the office long term. [Plaintiff's Dep. Ex. 3, 4.]

Plaintiff directs this Court's attention to *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir. 1998), and argues that her experience was analogous to the one found discriminatory in that case. Contrary to Plaintiff's assertions, she did not face the same uncertainty as the *Hendricks-Robinson* plaintiffs did regarding the nature of her position.[9] In *Hendricks-Robinson*, the employer and the employee's union "specifically created light-duty positions in the [collective bargaining agreement] but did not designate those jobs as 'temporary.'" *Id.* at 697. The plaintiffs were injured employees, some of whom were placed in titled production jobs with discrete job descriptions; others were given nonproduction, undefined office-type work. The Seventh Circuit concluded that "the evidence of record was insufficient to determine the extent to which [the employer] may have assigned injured employees to less strenuous work that was not formally classified temporary light-duty work," and a triable issue of fact remained as to "whether the injured employees knew that the jobs in which they were initially placed were truly temporary. . . ." *Id.*

This case differs significantly from *Hendricks-Robinson* because, as Plaintiff herself notes, Defendant did not set aside actual positions labeled "light duty." Nor is there any

---

[9] Plaintiff asserts that the lack of a specific duration for Defendant's light-duty assignments raises a question of fact regarding the status of this position. The Court is not so persuaded. None of the authority cited by Plaintiff stands for the legal proposition that the duration of light-duty positions must have a specifically articulated limited duration. In fact, as Defendant notes, such a requirement would have the perverse effect of prematurely denying injured employees continuous employment in instances where full recovery did not occur before that period expired. Likewise, any purported question of fact regarding the existence of a formal light-duty policy does not save Plaintiff's case. Whether Defendant has a formal, clearly delineated light-duty policy is not a material fact.

evidence that injured employees were ever placed in actual positions that existed independent of any temporary light-duty assignment. Instead, the record is unequivocal that Defendant gave Plaintiff temporary, clerical tasks to perform pending the outcome of her injury, and that Plaintiff herself was aware of the temporary nature of those tasks. The facts of this case leave no room for any inference other than that Plaintiff's office stint was temporary.

Plaintiff essentially asks, as a reasonable accommodation, that Defendant craft a new office position comprised of the light-duty tasks assigned to her. Thus, Plaintiff's accommodation request to remain assigned to her temporary office tasks is not reasonable. *Malabarba,* 149 F.3d at 697-98 (7th Cir. 1998) (ADA did not require employer to convert temporary assignment into a permanent position for an injured employee who retained his classification as a packager but temporarily performed material handler tasks); *See also Lewis v. Henderson*, 249 F. Supp. 2d 958, 969-70 (N.D. Ill. 2003) (court rejected injured postal worker's claims that a reasonable accommodation to his permanent lifting restrictions would have been to maintain his light-duty assignment); *Ulatowski v. John Sterling Corp.*, 2005 WL 88971 (N.D. Ill. 2005) (miscellaneous light-duty office work performed for close to a year by assembler in a home hardware manufacturing plant did not constitute a permanent position)*; Zak v. Ryerson Tull, Inc*., 2005 WL 946871, at * 5 (N.D. Ill. 2005) (line operator in a packaging position was not entitled to remain in his temporary light-duty clerical position as a reasonable accommodation); *Wright v. Owens-Illinois, Inc*., 2004 WL 1087359, at * 15 (S.D. Ind. 2004) (ADA did not require factory which placed injured employee in a light-duty position for twelve months to retain employee in that light-duty position indefinitely).

### 2.     Other vacancies for which Plaintiff was qualified to perform.

While the ADA does not obligate an employer to manufacture a new position for an otherwise qualified employee, it does require an employer to transfer employees to vacant positions for which they are otherwise qualified as a reasonable accommodation. *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2003). "It is the plaintiff's burden to show that a vacant position exists for which [s]he was qualified." *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). Having failed to raise a triable issue of fact regarding Defendant's refusal to retain Plaintiff in her light-duty assignment, Plaintiff's summary judgment challenge shifts to raising a genuine issue concerning reassignment to another vacant position for which she was qualified.

Plaintiff tenuously argues that a vacant position for which she was qualified existed in Defendant's parts department, but her argument fails in several ways. First, she does not show that Defendant had a vacant position. The unauthorized parts position which Gonzalez and Casey offered her was continuously occupied by Rick Henry. The ADA does not dictate that an employer remove an incumbent employee to accommodate a disabled employee. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996). Even so, the uncontroverted evidence is that neither Gonzalez nor Casey had authority to offer Plaintiff this position. Plaintiff further does not produce any admissible evidence from which the Court may conclude that she was otherwise qualified for a position in the parts department.

Plaintiff does not identify any other vacant position to which Defendant could have reassigned her. This is consistent with Defendant's representation that there was no vacant position at the time it terminated Plaintiff. Based on the record evidence -- or lack thereof -- Plaintiff has not raised a genuine issue of fact concerning any vacant position. Thus, there is no

triable issue concerning Defendant's alleged failure to accommodate her after it learned of her permanent restrictions. As a result, Defendant is entitled to summary judgment.

## V. Conclusion.

Consistent with the ADA, Defendant assigned Plaintiff to temporary clerical tasks in its 901 office after she was injured on the job. It maintained her temporary light-duty assignment for thirteen months until a physician deemed her injury-related restrictions permanent, at which time Defendant terminated her. The ADA did not require the Defendant to accommodate Plaintiff by making this temporary position permanent. Moreover, Plaintiff has failed to show that any vacant positions for which she was otherwise qualified existed at the time Defendant terminated her. Thus, Defendant's decision to terminate Plaintiff did not violate the ADA, and Defendant is entitled to summary judgment.

For the reasons stated above, Defendant's motion for summary judgment [Docket No. 38] is GRANTED with respect to all claims. Final judgment shall be entered accordingly. Costs shall be awarded to the Defendant.


Dated:  06/06/2006

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Blake J. Burgan
SOMMER BARNARD ATTORNEYS, PC
bburgan@sommerbarnard.com

Sarah Jane Graziano
KLEZMER & ASSOCIATES
sgraziano@randyklezmer.com

Nathan B. Maudlin
KLEZMER & ASSOCIATES
nmaudlin@randyklezmer.com

Michael C. Terrell
SOMMER BARNARD ATTORNEYS, PC
mterrell@sommerbarnard.com

Thomas H. Williams
JAFFE RAITT HEUER & WEISS
twilliams@jaffelaw.com